**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Janine M. Wallace

   v.                                              Civil No. 10-cv-017-JL

Bank of America et al.


**REPORT AND RECOMMENDATION**

Before the court are certain addenda to the complaint (doc. nos. 7-9) filed by Plaintiff, Janine Wallace.  On June 17, 2010, I conducted a preliminary review of Wallace's initial complaint (doc. no. 1) and first complaint addendum (doc. no. 4).  At that time, I directed Wallace to amend her claim alleging predatory lending practices against Bank of America.  See Order (doc. no. 6).  The new complaint addenda (doc. nos. 7-9) are before me for further preliminary review to determine if Wallace has stated any viable claim for relief in this action.[1]  See 28 U.S.C. § 1915(e)(2); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(1).

---

[1] In addition to Bank of America, Wallace names the following defendants:  Bank of New York Mellon; Haughey, Philpot, and Laurent, P.A.; William Philpot, Jr.; Roman Catholic Archdiocese of Boston; Roman Catholic Diocese of Manchester; and NAMBLA, a/k/a North America Man/Boy Love Association.  In a Report and Recommendation issued June 17, 2010 (doc. no. 5), I recommended dismissal of all claims identified in the Report and Recommendation, except for the predatory lending practices claim against Bank of America (Claim 2).

## Standard of Review

In conducting a preliminary review of pro se pleadings, the Court construes all of the plaintiff's factual assertions liberally, however inartfully pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party).  "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals).  This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint should be dismissed for failing to state a claim on which relief could be granted, the Court must consider whether the complaint, construed liberally, see Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'"  Id. (citation omitted).  Determining if a complaint states a viable claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 1950 (citation omitted).

## Background

The factual background for Wallace's claims, as asserted in her earlier filings in this case, is set forth in the Report and Recommendation (doc. no. 5), issued June 17, 2010.  Those allegations are summarized below and supplemented with new facts alleged in the addenda (doc. nos. 7-9).

A.   Brookside Circle, Belmont

In June 2005, Wallace purchased property on Brookside Circle in Belmont, New Hampshire.  Countrywide Home Loans provided a loan for the purchase secured by a mortgage on the property.  Bank of America subsequently acquired that mortgage.

In July 2007, Wallace transferred ownership of the Belmont property to a trust that she executed for the benefit of her granddaughter. The trust instrument, entitled "Irrevocable Intervivos Trust," lists the Brookside Circle property as the trust asset. Bank of New York Mellon acquired the mortgage from Bank of America, after the trust was recorded.

Wallace filed a petition in Belknap County Superior Court in June 2010, seeking to enjoin a foreclosure sale on the Brookside Circle property scheduled for June 23, 2010. The Superior Court denied Wallace's petition, in a sparsely written order, finding that Wallace did not show a likelihood of prevailing on the merits of her state court petition. See Ex. to Plf's Amend. 3 (doc. no. 8) at 32 (Wallace v. Haughey, Philpot, & Laurent P.A., No. 10-cv-184 (N.H. Super. Ct. Belknap Cnty. June 21, 2010) (denying petition to enjoin foreclosure)). The addenda filed by Wallace here fail to elaborate on the claims at issue in the state court action.

Wallace continues to list the Brookside Circle property as her mailing address in her federal court filings. It is unclear whether a foreclosure sale has occurred.

B.   <u>Waukewan Street, Meredith</u>

Wallace also owned property on Waukewan Street in Meredith, New Hampshire, which she purchased with a loan secured by a mortgage later acquired by Bank of America.  On July 27, 2007, Wallace transferred this property to NH Omega, Inc., a nonprofit corporation founded and operated by Wallace.  In the deed to NH Omega, Wallace retained the right to live on the Waukewan Street property in Meredith with her minor granddaughter.

In the summer of 2009, Wallace's daughter, Vanessa, contacted Bank of America and was told that Wallace did not qualify for a "workout" of her defaulted loan.  The bank representative answering Vanessa's questions could not tell Vanessa why Wallace would not qualify for a workout.  Wallace was also informed at around this time that her mortgage payments would increase by $300.  Wallace believes that she should have qualified for a workout program because three members of her immediate family had recently died.

Wallace asserts that Mortgage Electronic Registration Systems, Inc. ("MERS") foreclosed on the Waukewan Street property in 2009.  A foreclosure sale on October 8, 2009 cancelled $56,017.50 of Wallace's debt to Bank of America.  Wallace

received an IRS Form 1099-C in January 2010, indicating the date of sale, purchase price, and amount of cancelled debt.

After Wallace received the IRS notice of cancelled debt, a man identifying himself as Frank Brewer, Bank of America Vice President, left a message on Wallace's phone.  Wallace asserts that Brewer "denied" the IRS Form 1099-C in his message.  Wallace returned the call and reached "Oriel Marketing."  Amend. 3 (doc. no. 8) at 1.  Wallace contacted the N.H. State Police regarding the phone message.

Wallace has asserted that Bank of New York Mellon took certain items of personal property from 30 Waukewan Street, including furniture, picture frames, a statue, a freezer, toys, a computer, and antiques.  Wallace has estimated that these items were worth a total of $3,500.

C.  Board of Nursing

On April 19, 2007, Wallace appeared before the New Hampshire Board of Nursing for a disciplinary hearing that resulted in her losing her registered nurse license.  Witnesses at the hearing included Belmont Police Chief Vincent Baiocchetti.  According to Wallace, Baiocchetti defamed her by falsely implying that Wallace's minor granddaughter had been abused.

Discussion

I. Predatory Lending Practices (Claim 2)

The Order dated June 17, 2010 (doc. no. 6), directed Wallace to file an amended complaint to state with greater specificity the nature of her predatory lending claim against Bank of America, a claim denominated as "Claim 2" in the June 2010 Report and Recommendation. In pertinent part, that Order directed Wallace to identify the legal theory on which she based her claim of predatory lending, and to describe the conduct of Bank of America that she alleged to constitute such practices.

To assert a cognizable claim implicating predatory lending practices, a plaintiff must generally show that the practices at issue violated some state statute, common law principle, or federal law, and that the plaintiff suffered harm as a result. See, e.g., Gilroy v. Ameriquest Mortg. Co., 2009 WL 435296, at *5 (D.N.H. Feb. 20, 2009) (predatory lending allegations evaluated in connection with plaintiff's claim that lender violated New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A).

Here, Wallace has pointed to materials filed in an unrelated case in California, in which Bank of America and its president, Brian Moynihan, are charged with racketeering; Wallace has

pointed to no specific practices undertaken by Bank of America in lending money to her, to support her predatory lending practices claim. Rather, her factual allegations concern: the bank's failure to offer a workout program to her; a phone call from a person purporting to represent the bank, contradicting information contained in an IRS Form 1099-C; and the banks' actions in foreclosing on the mortgages.

Wallace's citation to claims pending and evidence submitted in an unrelated case in California involving Bank of America does not provide any basis for this court to find that Bank of America has violated any law as to Wallace. She cannot base a claim on such allegations. See Gilroy v. Ameriquest Mortg. Co., 2009 WL 799622, at *2 (D.N.H. Mar. 24, 2009) ("To prove her fraud claim, [plaintiff] was required to submit evidence showing that the defendants engaged in fraudulent lending practices against her; evidence of fraudulent lending practices against others is irrelevant to her case."). The additional facts alleged with respect to the workout package, the phone call she received, and the foreclosures do not state a claim for relief under any legal theory that I can identify. Accordingly, I recommend dismissal of the predatory lending claim asserted against Bank of America.

## II. Additional Claims

### A. Personal Property

Wallace has asserted that Bank of New York Mellon took certain items that belonged to her from 30 Waukewan Street. Wallace has valued the property at issue in this claim against Bank of New York Mellon at $3,500.

Wallace has asserted no viable federal claim against Bank of New York Mellon for taking personal property from her. To the extent that Wallace may have stated a claim upon which relief can be granted under a state law theory of conversion or trespass, the value of the claim is too low to invoke this court's original jurisdiction over the claim. See 28 U.S.C. § 1332 (minimum amount in controversy for diversity jurisdiction is $75,000). To the extent that a state law claim may arise from the facts alleged, this court should decline to exercise supplemental jurisdiction. See 28 U.S.C. § 1367(c)(3).

### B. Defamation Claim

Wallace claims that Belmont Police Chief Vincent Baoicchetti defamed her before the Board of Nursing. Specifically, she asserts that Baoicchetti implied in a statement to the Board of Nursing that Wallace's granddaughter had been abused, when in

fact the granddaughter had not suffered abuse.  See Plf's Am. 3, at 2.  I construe this claim as intending to assert that Baoicchetti's statements were defamatory as to Wallace, and that this defamation caused Wallace to suffer a deprivation of her liberty interest in her reputation without due process, under 42 U.S.C. § 1983.

A claim that a state actor has injured an individual's reputation is actionable under 42 U.S.C. § 1983, only if the injury occurred in conjunction with the deprivation of some tangible interest, such as "at will" public employment.  See Paul v. Davis, 424 U.S. 693, 709 (1976).  This so-called "stigma-plus" test prevents run-of-the-mill defamation claims against state actors from being actionable as constitutional torts.  See id. at 701.  Under this test, defamatory statements alone are insufficient to support a constitutional claim; additional injury must flow from the defamation.  See Rehberg v. Paulk, 2010 WL 2788199, at *17-*18 (11th Cir. July 16, 2010).

Here, Wallace has asserted that Baoicchetti defamed her, but it was the Board, not Baoicchetti, that stripped Wallace of her registered nurse license.  Wallace has not alleged that Baoicchetti's statements caused the Board to convene the hearing,

or otherwise influenced the Board in revoking the license. The Board's findings, see Pl's Am. 3 (doc. no. 9), do not suggest that statements made by Baiocchetti relating to the granddaughter had any impact on its decision. The Board's findings and its stated decision rationale are devoid of references to any child abuse allegations relating to Wallace, or any allegations relating to her granddaughter. Accordingly, this court should dismiss the section 1983 defamation claim asserting that Baoicchetti implied before the Board of Nursing that Wallace's granddaughter had been abused. See Hawkins v. R.I. Lottery Comm'n, 238 F.3d 112, 116 (1st Cir. 2001) (no viable due process claim where party responsible for alleged defamation was not party responsible for termination). To the extent that a state law claim for defamation may arise from the facts alleged, this court should decline to exercise supplemental jurisdiction over the claim. See 28 U.S.C. § 1367(c)(3).

    C.    Child Sexual Abuse

Wallace's addenda include a large amount of information written by third parties concerning child sexual abuse. The addenda also contain Wallace's own statements regarding her interactions with certain witnesses appearing before the Board of

Nursing, and the scandal involving child abuse perpetrated or facilitated by Roman Catholic clergy.  I have reviewed the information provided by Wallace with due consideration for her pro se status, and conclude that nothing alleged therein revives any claim previously dismissed from this case or otherwise alters my earlier recommendation that those claims should be dismissed.

    D.    <u>Validity of Mortgages and Foreclosures</u>

Wallace's addenda include new claims asserting that the foreclosures at Waukewan Street and Brookside Circle were not authorized by state laws, N.H. Rev. Stat. Ann. ("RSA") §§ 479:2 and 480:1, and that MERS had no authority to foreclose on Waukewan Street because it was not registered to do business in New Hampshire.  These claims are antecedent to Wallace's claim, enumerated in the June 2010 Report and Recommendation as Claim 3, charging that the defendant lawyers and their out-of-state clients harassed Wallace by pursuing foreclosures contrary to state law.

Wallace misconstrues certain unambiguous state statutes and settled legal principles regarding mortgages, foreclosures, and homestead rights, in asserting that the Waukewan Street and Brookside Circle foreclosures were not authorized.  Neither the

assertion of a homestead right, nor a conveyance of the properties, undercuts the mortgagee's right to foreclose on prior recorded mortgages upon the borrower's default.  A conveyance of mortgaged real estate does not release the real estate from any duly recorded mortgage.  See Cadle Co. v. Bourgeois, 149 N.H. 410, 417, 821 A.2d 1001, 1008 (2003); accord Restat. 3d of Prop.: Mortgs., § 5.1 cmt. b.  Furthermore, a debtor's ability to assert a homestead right under RSA § 480:1 does not affect the bank's authority to foreclose on the mortgage.  See Flynn v. Nashua Fed. Sav. & Loan Ass'n, 118 N.H. 84, 85, 382 A.2d 628, 628 (1978) (homeowners' assertion that they had not validly waived homestead rights did not impair bank's ability to foreclose); cf. RSA § 480:5-a (homestead right may be encumbered by certain mortgages, including purchase money mortgage).

 Finally, while foreign corporations not registered with the Secretary of State in New Hampshire may not "transact business" in the state, see RSA § 293-A:15.01(a), an unambiguous state statute exempts mortgage foreclosures from the definition of "transacting business."  See id. § 293-A:15.01(b)(8) (activities not constituting "transacting business" include "securing or collecting debts or enforcing mortgages and security interests in

13

property securing the debts"). Thus, MERS was not required to register with the Secretary of State in New Hampshire before foreclosing on the Waukewan Street mortgage. Cf. Orzoff v. MERS, 2009 WL 4643229, at *6 (D. Nev. Mar. 26, 2009) (under Nevada law exempting foreign corporations "enforcing mortgages" from registration requirement, "MERS was not required to register with the . . . Secretary of State" prior to foreclosing on mortgages).

Accordingly, Wallace has not asserted any facts or viable legal theories on which to base her claim that the foreclosures at issue were invalid, and that the defendant lawyers harassed her by pursuing such foreclosures. Therefore, the claims based on the asserted invalidity of the foreclosures should be dismissed.

III. Colorado River

The pendency of the state court petition to enjoin foreclosure of the Brookside Circle mortgage raises the question of whether this court should stay the federal proceeding, pursuant to the principles set forth in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). "That doctrine . . . allows federal courts in limited instances to stay or dismiss proceedings that overlap with concurrent litigation in

state court." Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 21 (1st Cir. 2010). The justification for abstaining is to ensure "'[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Colorado River, 424 U.S. at 817 (citation omitted). Dismissing or staying such cases is discretionary, and is warranted only in exceptional circumstances, with the balance weighted heavily against staying or dismissing the federal case. See Jimenez, 597 F.3d at 28.

The relevant factors include, but are not limited to, the following:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Id. at 27-28 (citation omitted).

The factors at issue here include the first, third, fourth, and fifth listed. The remaining factors are essentially neutral.

The first factor embodies a prudential concern for deferring to another court for the sake of "'comprehensive disposition of

rights in a particular piece of property.'"  Id. at 28 n.6 (citation omitted).  The state court has exercised jurisdiction over a res, the Brookside Circle property, in the petition to enjoin the foreclosure.  That factor weighs in favor of abstaining, but is not determinative.  See Sherzer v. Homestar Mortg. Servs., 2010 WL 1947042, *14 (E.D. Pa. May 7, 2010) (declining to stay federal truth-in-lending case during pendency of state foreclosure proceedings); see also United States v. Fairway Capital Corp., 483 F.3d 34, 41 (1st Cir. 2007) (state court's in rem jurisdiction does not make abstention mandatory); cf. Colorado River, 424 U.S. at 818-19 (no single factor is determinative).

As to the next relevant factor, the state case, though later filed, has advanced further than the federal case.  The state court denied a preliminary injunction motion after a hearing that proceeded on offers of proof.  That degree of progress does not weigh heavily in favor of abstention, however, as the summary nature of the state court order does not reveal whether any of the issues and claims involved in the federal case have proceeded towards resolution in that case.

As to the other relevant factors, the risk of piecemeal litigation weighs in favor of dismissal only if there is "'some

exceptional basis for dismissing one action in favor of the other,'" such as a clear federal policy favoring unified proceedings.  Jimenez, 597 F.3d at 29 (exceptional bases may also include novelty of state law issues; likelihood that resolution of state law issue would "moot or otherwise inform the federal litigation"; real possibility of different interpretations of insurance policy at issue; and likelihood of fragmented decisionmaking when not all interested parties are present in federal case).  Here, no federal policy embodied in a statute favors unification of the proceedings, the federal case involves both state and federal claims, and the state law issues are well settled and straight forward, not novel or difficult.  No party to the state proceeding is absent from the federal case.  No exceptional bases for abstaining are present here.

Additional relevant considerations weighing against a stay include the broader scope of the federal case, involving parties, issues, and claims not at issue in the petition on the Brookside mortgage foreclosure.  Staying claims, without any realistic possibility that a state court decision would have any impact on those stayed claims, would be contrary to the prudential interests underlying the Colorado River doctrine.

17

Furthermore, the claims in this case, over which this court has original jurisdiction, are not viable.  Staying claims now only surely to dismiss them later would be a pointless exercise of discretion at present.  Wise judicial administration is served when this court dismisses those claims here upon completion of a preliminary review of the pleadings, pursuant to 28 U.S.C. § 1915(e)(2).

In sum, a stay is not warranted here.  The new factual allegations in the addenda, construed along with the allegations in the original complaint, fail to state any viable federal claim against any defendant named in this action.  To the extent that the facts alleged give rise to any state law claim against any individual, bank, or other entity, this court should decline to exercise supplemental jurisdiction over such claims.  See 28 U.S.C. § 1367(c)(3).

## Conclusion

The predatory lending claim against Bank of America, and all other claims asserted in the Complaint and its Addenda (doc. nos. 1, 4, and 7-9), should be dismissed.  Approving this Report and Recommendation will result in dismissal of the case, without prejudice as to any state law claims Wallace may have, arising out of the facts alleged.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See <u>Unauth. Pract. of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  August 30, 2010

cc:  Janine M. Wallace, pro se

LBM:nmd